No. 04-614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 156

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

ARTHUR DENNIS KUIPERS,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 2003-344
                    Honorable Mike Salvagni, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Kirsten Mull Core, Attorney at Law, Bozeman, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Ilka Becker,
          Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney; Gary Balaz,
          Deputy County Attorney, Bozeman, Montana


                  Submitted on Briefs:  May 31, 2005

                          Decided:  June 21, 2005


Filed:

      _____
                        Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Arthur Dennis Kuipers appeals from the Judgment and Sentence entered by the Eighteenth Judicial District Court, Gallatin County, upon a jury verdict finding him guilty of theft and violating an order of protection. We affirm.

¶2 The issue on appeal is whether the evidence is sufficient to support the jury's verdict.

## BACKGROUND

¶3 The marriage of Kuipers and Martha Kuipers (Martha) was dissolved in 1998. The dissolution decree included a restraining order prohibiting Kuipers from, among other things: going to a residence and four-plex identified by addresses; following, harassing, intimidating, telephoning or threatening Martha; and contacting his teenaged sons Colter and Dustin. The restraining order was amended in 2001 and again in January of 2002.

¶4 In October of 2002, Kuipers and Martha each gave Colter $2400 to purchase two snowmobiles. Colter obtained titles to the snowmobiles in his name. On November 14, 2003, Kuipers called Colter and Martha and told them he intended to take a snowmobile from the four-plex where Colter lived. Upon receiving messages from Kuipers, Colter called Martha from his work and asked her to go to the four-plex. Martha did so, observed Kuipers' truck and called 911 from a neighbor's driveway. She then watched Kuipers drive off with a snowmobile. Gallatin County Sheriff's Deputy Mark Murphy responded to the 911 call and questioned Kuipers, who stated he owned the snowmobile. After learning the snowmobile was registered to Colter, Murphy arrested Kuipers.

2

¶5     The State of Montana charged Kuipers with theft, a felony, and violating an order of protection, a misdemeanor. Colter, Martha, and Murphy testified for the State at trial. Kuipers, Dustin, and Kuipers' sister, Terry Carlson, testified for the defense. The jury found Kuipers guilty of both charged offenses, and the District Court subsequently sentenced him. Kuipers appeals. We include additional facts as necessary in the discussion below.

## STANDARD OF REVIEW

¶6     We review whether the evidence is sufficient to support a verdict of guilty in a criminal case to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. That review encompasses whether the verdict is supported by sufficient evidence, not whether the evidence would support a different verdict. *See State v. Larson*, 2004 MT 345, ¶ 52, 324 Mont. 310, ¶ 52, 103 P.3d 524, ¶ 52 (citations omitted).

## DISCUSSION

¶7     *Was the evidence sufficient to support the jury's verdict?*

¶8     Kuipers first asserts the evidence was insufficient to support the jury's finding that he was guilty of theft. Section 45-6-301(1)(a), MCA, provides that a person commits theft by purposely or knowingly obtaining or exerting unauthorized control over property of the owner with the purpose of depriving the owner of the property.

¶9     Kuipers asserts the State did not prove he purposely or knowingly had unauthorized control of the snowmobile, because he believed he owned or partially owned it. He points

3

to evidence that he paid $2400 toward the snowmobiles' purchase, the snowmobiles were for the family's use and he did not know Colter held the titles to the snowmobiles.

¶10    As stated above, the question is not whether the evidence could support a different verdict, but whether sufficient evidence supports the verdict rendered. *See Larson*, ¶ 52. At trial, Colter testified the $2400 check from Kuipers was a gift. Martha stated the snowmobiles were purchased for Colter and Dustin's use, and Colter was more likely to take care of the paperwork than Dustin. Dustin testified he assumed Colter's name was on the titles because Colter "took care of [the snowmobiles], used them most." Kuipers stated he was in drug treatment when the snowmobiles were titled, and he had assumed the snowmobiles were titled to Martha and himself. Kuipers admitted on cross-examination that, rather than giving Colter a check, he could have purchased the snowmobiles himself and had them registered in his own name.

¶11    Weighing evidence, assessing witness credibility and resolving conflicting evidence are within the province of the trier of fact. *State v. Gilmore*, 2004 MT 363, ¶ 18, 324 Mont. 488, ¶ 18, 104 P.3d 1051, ¶ 18 (citations omitted). Here, the jury assessed witness credibility and resolved conflicting evidence. Viewing the testimony in a light most favorable to the prosecution, we conclude the jury had sufficient evidence to find Kuipers purposely or knowingly obtained or exerted unauthorized control over property owned by Colter beyond a reasonable doubt.

¶12    Kuipers also argues, however, that the State did not establish his purpose was to deprive Colter of property. He asserts he had the same right to use the snowmobile as the

4

rest of the family. In addition, he contends that "beyond the insinuation that [Kuipers] intended to sell the snowmobile, the State failed to prove that he . . . intended to dispose of the property." He also contends "it is highly unlikely" that he would have "forewarn[ed]" Martha and Colter of his plan to take the snowmobile if he intended to dispose of it.

¶13 Again, the question is not whether evidence would support a different verdict, but whether sufficient evidence supports the verdict rendered. *See Larson*, ¶ 52. Martha testified at trial that, on November 14, 2003, Kuipers called her twice at work, indicating he "was desperate for money" and stating he wanted to get the snowmobiles to sell. Colter testified the family could use the snowmobiles "in a responsible manner," but "not to sell [them] to get drugs." Kuipers testified that he had left a message for Colter on November 14, stating he had told Martha the night before that he "was broke and she was only willing to give [him] $5 and nothing more" and he was going to take one of the snowmobiles. Viewing this testimony in a light most favorable to the prosecution, we conclude the jury had sufficient evidence to find Kuipers' purpose was to deprive Colter of property beyond a reasonable doubt.

¶14 Next, Kuipers asserts the evidence was insufficient to support the jury's finding that he was guilty of violating an order of protection. Section 45-5-626(1), MCA, provides, in pertinent part, that a person violates an order of protection if the person, with knowledge of the order, purposely or knowingly violates one of the order's provisions.

¶15 The 1998 dissolution decree provided that a prior restraining order would remain in effect and set forth the order's terms, including a provision that Kuipers "is hereby excluded

5

from the [four-plex] rental property . . . and from the grounds thereof." The order was amended in 2002, pursuant to the parties' stipulation,

> to allow telephone, mail and personal contact between Martha Kuipers and Dustin Kuipers and Respondent, Dennis Kuipers, so long as Dennis Kuipers is under the custody of the Montana State Department of Corrections. All other parts of the Restraining Order not conflicting are to remain in full force and effect[.]

In the 2002 amendment, the court noted a 2001 amendment that is not of record, which apparently allowed "full contact" between Kuipers and Colter. Kuipers does not contest that he was aware of the 1998 order and the amendments.

¶16 Noting the State charged him with going to the four-plex, Kuipers asserts the amended order is "not clear" and "[i]t begs reason that a Court would allow all parties to enjoy contact with each other and maintain a provision that prohibits them from going to specific property." Pointing to evidence that he lived with Martha and Dustin at the residence listed in the amended restraining order and stored a boat he co-owned with Colter at the four-plex, he asserts it is "unreasonable" to hold him responsible for going to the four-plex when the other family members previously allowed him to do so. He argues "the only logical reading" of the amended order is that it only prohibited his following, harassing, intimidating or threatening Martha.

¶17 The issue before us is not whether the restraining order begs reason or is logical. In 2002, the parties--including Kuipers--stipulated to certain amendments to the restraining order and left "other parts . . . not conflicting . . . in full force and effect[.]" The provision from the 1998 order excluding Kuipers from the four-plex does not on its face conflict with

6

the amendments allowing contact between Kuipers, Martha, Colter and Dustin. Moreover, the jury apparently did not believe Kuipers' testimony that he thought the amended order "was in effect while [he] was under the hands of Montana State Prison system, and that when [he] was through with [his] prison term or [his] sentencing, the restraining order was then not in effect." As stated above, credibility determinations are within the province of the trier of fact. *Gilmore*, ¶ 18.

¶18 In reviewing a jury verdict, we do not decide whether we would have reached the same result. We conclude the jury had sufficient evidence to find Kuipers guilty of violating the protective order beyond a reasonable doubt.

¶19 We hold the evidence was sufficient to support the jury's verdict.

¶20 Affirmed.


/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS