
DA 07-0446

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 340

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID RAY OMMUNDSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 06-536
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  August 27, 2008

Decided:  October 9, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 David Ray Ommundson ("Ommundson") was convicted of felony indecent exposure following a jury trial held in the Thirteenth Judicial District, Yellowstone County. At trial, Ommundson moved for a directed verdict, appropriately referred to as a motion to dismiss for insufficient evidence, claiming the State failed to establish the elements of indecent exposure under § 45-5-504, MCA (2005). Ommundson appeals the District Court's denial of his motion to dismiss for insufficient evidence. We affirm.

¶2 The restated issue on appeal is:

¶3 Did the District Court err by denying Ommundson's motion to dismiss for insufficient evidence on the charge of felony indecent exposure?

**BACKGROUND**

¶4 At approximately 10:00 a.m. on Saturday, April 22, 2006, two women hiking along a trail on top of the "Rimrocks" in an area known as Airport Overlook Park in Billings, Montana, came across a totally nude male. The public trail, which is loosely maintained by the City of Billings, runs adjacent to Highway 3 and receives fairly heavy use from hikers, walkers, joggers, bicyclists, and view seekers.

¶5 The naked man, later identified as Ommundson, was lying next to a fully clothed woman about eight to ten feet from the trail. In phone statements following the incident, one of the women stated that she "came across a man who was totally nude" and that she was "disgusted and offended that he [Ommundson] would be nude in a public place." When asked whether she had any conversations with the man, the woman stated, "[n]o, because I wanted to get by him as quickly as possible. I was very uncomfortable." The

2

woman also stated that the man made eye contact with her. Finally, she stated that while she did not see the man's genitals, she would have if the woman on the blanket had not been sitting there. Similarly, the second woman stated that they "came across a very naked man" and that when both of them went back to the area after calling police, the man was in the same place, lying "completely nude." Finally, the woman stated that Ommundson did not appear to care that he was lying nude in a public place.

¶6 Approximately ten to fifteen minutes later, a Billings police officer responded to the area and found Ommundson lying on his back with his eyes closed, genitals fully exposed, in the same place described by the women. The officer told Ommundson to get dressed, which prompted Ommundson to grab a pair of nylon shorts that were within his reach.

¶7 Ommundson was charged with two counts of felony indecent exposure, a charge later amended to a single count of the same. A two-day jury trial was held during which the State called the women as well as the officer to testify about the incident. The first woman testified that she saw a "nude" man sitting on a blanket. When asked how she knew whether he was totally naked, she said, "what I saw was open, nothing was covered, you know, and as far as I could see, nothing was covered." The other woman testified that they "came across someone who was nude" and that she "was double shocked to see this nude person right on the trail." Finally, the officer testified that when he got out of his patrol car upon responding to the area, that he "looked over to the side, and sure enough they [the women] were right, here's some guy laying out there naked." Ommundson did not testify in his defense.

3

¶8 At the close of the State's case-in-chief, Ommundson moved for a directed verdict (motion to dismiss for insufficient evidence). Ommundson argued that the witnesses failed to positively identify Ommundson and that the State failed to establish the elements of indecent exposure since neither of the women testified that she actually saw Ommundson's genitals. Specifically, Ommundson's counsel stated, "[t]here's been no testimony that either [woman was] exposed or viewed his genitalia." When asked by the District Court whether Montana's indecent exposure statute required the women to actually see Ommundson's genitals, the State responded by stating that it did not, because the statute focuses on the defendant's intent. Further, the State argued that, at minimum, there was "circumstantial evidence that he was exposed to those women on the rims that day."

¶9 The District Court denied Ommundson's motion to dismiss for insufficient evidence, stating, "I don't think [the] legislature would require these women to actually say that they then looked at his genitalia if they believed his genitalia was exposed, and from that, they were offended." The jury subsequently found Ommundson guilty of the charge of felony indecent exposure, and the District Court entered its judgment and sentence.

**STANDARD OF REVIEW**

¶10 We review *de novo* a district court's denial of a motion to dismiss for insufficient evidence. *State v. Rosling*, 2008 MT 62, ¶ 33, 342 Mont. 1, ¶ 33, 180 P.3d 1102, ¶ 33.

4

**DISCUSSION**

¶11   **I. Did the District Court err when it denied Ommundson's motion to dismiss for insufficient evidence on the charge of felony indecent exposure?**

¶12   Under § 46-16-403, MCA, the District Court may dismiss a criminal action and discharge the defendant if the evidence is insufficient to support a guilty verdict. Further, "[a] motion to dismiss for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Rosling*, ¶ 35. At the District Court, and here, Ommundson contends the evidence is insufficient for a rational trier of fact to find the essential elements of indecent exposure under § 45-5-504, MCA, which required the State to establish: (1) that Ommundson knowingly or purposely exposed his genitals; (2) that he did so under circumstances that he knew were likely to cause affront or alarm; and (3) that he did so "in order to abuse, humiliate, harass, or degrade another" or to "arouse or gratify [his] own sexual response or desire . . . ." We address each element separately in the following discussion.

¶13   **A. Did Ommundson knowingly or purposely expose his genitals?**

¶14   Ommundson claims the evidence is insufficient to find that he knowingly or purposely *exposed* his genitals. Specifically, Ommundson claims that exposure cannot be established in this case since the two female hikers did not directly observe Ommundson's genitals, even though Ommundson admits in his brief to this Court that he was nude in Airport Overlook Park on April 22, 2006. Ommundson argues that a person

5

is not "exposed" for purposes of Montana's indecent exposure statute unless a complaining witness directly observes the defendant's genitals. Further, Ommundson appears to argue that circumstantial evidence is not sufficient to prove exposure. In response, the State contends that nothing in § 45-5-504, MCA, requires direct evidence of genital exposure, and further, that "direct observation of a person's genitals is not necessary to support a finding that a person has exposed his genitals." Rather, the State claims that "testimony that a person is 'nude' or 'naked' is sufficient to support a finding that the person's genitals are exposed."

¶15 In this case, there is direct evidence from the investigating officer that Ommundson's genitals were exposed. Upon arriving at the scene described by the women, the officer stated that he saw Ommundson, "laying on his back," that "he didn't have a stitch of clothing on," and that he "was naked." When asked whether Ommundson's genitals were exposed, the officer stated, "Yeah." Indeed, Ommundson admits to being naked that morning, arguing only that the women did not directly observe his genitals. Given the officer's testimony and Ommundson's own admission, there was sufficient evidence for a jury to find that Ommundson was exposed for purposes of § 45-5-504, MCA.

¶16 The jury in this case could have reached the same conclusion from the women's testimony. In Montana, "circumstantial evidence alone may be sufficient to obtain a conviction in a criminal case." *State v. Southern*, 1999 MT 94, ¶ 92, 294 Mont. 225, ¶ 92, 980 P.2d 3, ¶ 92. Circumstantial evidence is evidence that "tends to establish a fact

6

by proving another and which, though true, does not itself conclusively establish that fact but affords an inference or presumption of its existence." Section 26-1-102(1), MCA.

¶17   At trial, one of the women testified that she saw a "naked man" and that she did not see any clothing on him. When pressed about how she knew the man was naked, she stated that, "when I looked at him, all I could think is that man is totally nude . . . ." Further, she testified that the only reason she did not see Ommundson's genitals was because she chose not to. The other woman testified, "I didn't see his genitals because he was faced the other way, but I know he was nude because you could just see his buttocks and, you know, just kind of straight on down, so I say that I did see a naked man." From this testimony alone, a rational trier of fact could find that Ommundson's genitals were exposed for purposes of § 45-5-504, MCA.

¶18   **B. Did the exposure of Ommundson's genitals occur under circumstances in which Ommundson knew the conduct was likely to cause affront or alarm?**

¶19   Ommundson claims the evidence is insufficient to establish the second element of § 45-5-504, MCA, which requires the exposure to occur under circumstances in which the defendant knew the conduct was likely to cause affront or alarm. In support of his argument, Ommundson appears to claim that this element can only be satisfied if a person *intends* to elicit "affront or alarm." This is not true. Section 45-5-504, MCA, requires only that the exposure take place "under circumstances in which the person *knows* the conduct is likely to cause affront or alarm." (Emphasis added.) In Montana, "[w]hen knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence."

7

Section 45-2-101(35), MCA. Given that a person's mental state can rarely be established with direct evidence, "[a] mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense." *State v. Krum*, 238 Mont. 359, 361, 777 P.2d 889, 890 (1989); *see also* § 45-2-103(3), MCA.

¶20 In this case, we agree with the State that the evidence presented during the course of the trial, when viewed in the light most favorable to the prosecution, was sufficient for the jury to find that Ommundson knew his conduct occurred under circumstances likely to cause affront or alarm. Both women testified that Ommundson was lying naked not more than eight to ten feet from a trail on a Saturday morning in a public park that is frequently used by hikers, bikers, and joggers and that he was clearly visible from both the trail and a nearby parking lot. The second woman testified that she "came across someone who was nude" and that she "was double shocked to see this nude person right on the trail." Because the exposure occurred in such a place and time that was sure to be viewed by a member of the public, we conclude there was sufficient evidence for a rational trier of fact to find that Ommundson knew the exposure occurred under circumstances that were likely to cause affront or alarm.

¶21 We also note that Ommundson conceded "knowledge" during pretrial discussions with the District Court about whether to allow evidence of Ommundson's arrest in 2002 for indecent exposure. In objecting to the evidence, Ommundson's counsel stated the following: "Our client is not saying in any way, shape or form that he did not know that this conduct was not against the law." Further, counsel conceded "that our client has knowledge that if his genitalia were exposed, that that would be against the law, and he

8

would also concede that if his genitalia were exposed, that that could reasonably cause the remaining portion and remaining elements in the statute." Finally, counsel stated, "[s]o basically what we would like, Your Honor, is we would object to any testimony given by the officer, being that we would concede knowledge." Although the District Court overruled Ommundson's objection, the State ultimately did not introduce evidence of the 2002 incident, relying instead on the concession and posture of the trial at that point. Ommundson's attempt to argue this element later at the District Court and on appeal to this Court is especially unpersuasive in light of his concession that he had the requisite knowledge required by the statute.

¶22 **C. Did Ommundson expose himself in order to "abuse, humiliate, harass, or degrade another" or to "arouse or gratify" his own sexual desire?**

¶23 Ommundson argues the evidence is insufficient for a rational trier of fact to find that he exposed himself in order to "abuse, humiliate, harass, or degrade another" because his actions amounted to nothing more than nude sunbathing. We disagree. As previously stated, "[a] mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense." *Krum*, 238 Mont. at 361, 777 P.2d at 890; *see also* § 45-2-103(3), MCA. We also note that determinations of witness credibility and the weight of evidence presented at trial is within the province of the jury. *See State v. Kuipers*, 2005 MT 156, ¶ 11, 327 Mont. 431, ¶ 11, 114 P.3d 1033, ¶ 11.

¶24 A jury could have reasonably inferred from Ommundson's actions and from the facts and circumstances presented at trial that he exposed himself in order to "abuse, humiliate, harass, or degrade another." First, the jury heard testimony from three

9

different witnesses, including an investigating officer, that the exposure occurred in a very public setting near a frequently used trail on a warm Saturday morning. From this conduct, a jury could reasonably conclude that Ommundson knew he would be seen naked that morning. Second, the jury heard testimony that he was not merely sunbathing, but that he maintained prolonged eye contact with one of the women. In response, the woman stated that she stared back to "let him know that [she] was disgusted and that he [Ommundson] wasn't intimidating [her] sitting there in the nude." The jury could reasonably infer from this interaction that Ommundson's conduct toward the women was deliberate and that he engaged in that manner of behavior in order to humiliate, harass, or degrade another.

¶25 Finally, on a related matter, Ommundson argues on appeal that "the investigating officer's testimony [was] not sufficient to establish the elements of the offense." Therefore, according to Ommundson, the jury should not have considered the investigating officer's testimony. However, we agree with the State that Ommundson provides no authority for this proposition. Accordingly, we do not address this issue further on appeal.

¶26 Based on Ommundson's actions and in consideration of all the facts and circumstances presented, we conclude that there was sufficient evidence for a rational trier of fact to find the essential elements of the charge of indecent exposure beyond a reasonable doubt. Therefore, we hold that the District Court did not err in denying Ommundson's motion to dismiss for insufficient evidence.

¶27 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS